UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CAROL CARPENTER,                                    )
                                                    )
                        Plaintiff,                  )    11 C 7623
                                                    )
            vs.                                     )    Judge Feinerman
                                                    )
SIRVA RELOCATION, LLC, a Delaware limited liability )
company, previously sued as SIRVA, INC., and OFFICE )
DEPOT, INC., a Delaware corporation,                )
                                                    )
                        Defendants.                 )

<u>**MEMORANDUM OPINION AND ORDER**</u>

Carol Carpenter brought this diversity suit against her employer, Office Depot, Inc., and

its employee relocation contractor, SIRVA Relocation, LLC, asserting claims for breach of

contract, fraudulent misrepresentation, negligent misrepresentation, breach of quasi-contract,

promissory estoppel, and specific performance. Doc. 24. The court dismissed the fraudulent

misrepresentation claim against Office Depot. Doc. 36. Now before the court are Office

Depot's and SIRVA's motions for summary judgment. Docs. 69, 72. SIRVA's motion is

granted, and Office Depot's motion is granted in part and denied in part.

**Background**

The facts are stated as favorably to Carpenter, the non-movant, as permitted by the record

and Local Rule 56.1. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

In 2004, Carpenter relocated from Portland, Oregon, to Chicago, Illinois, upon accepting

a District Sales Manager position with Office Depot. Doc. 83 at p. 3, ¶ 7. After moving to

Chicago, Carpenter and her husband, Kirk Carpenter, purchased a cooperative property ("the co-

op") on the city's North Side. *Id*. at p. 3, ¶ 8. In 2006, Carpenter applied to Office Depot for a

District Sales Manager position in Portland, Oregon. *Id*. at p. 3, ¶ 9. Chris Lupo, who led Office Depot's sales force in the Pacific Northwest Region, interviewed Carpenter, and Carpenter told Lupo of her desire to move to Portland to be closer to her family. *Id*. at p. 4, ¶ 10; Doc. 74-3 at ¶ 2. Carpenter did not ask Lupo about the relocation benefits to which she would be entitled if she were offered and accepted the Portland position, and nor did Carpenter tell Lupo that her acceptance of the Portland position was contingent upon the sale of the co-op. Doc. 83 at p. 4, ¶ 11. Lupo offered Carpenter the position, Carpenter accepted the position on or after May 26, 2006, and Lupo provided Carpenter with a confirmation letter memorializing the acceptance. *Id*. at p. 5, ¶¶ 12-13.

Office Depot contracted with SIRVA to handle the relocation process for eligible Office Depot employees. *Id*. at pp. 1-2, 5, ¶¶ 2, 14; Doc. 84 at p. 1, ¶ 2. The contract between SIRVA and Office Depot states that they are "[not] joint venturers, partners, or affiliates of each other and shall not be held responsible for each other's actions or omissions except as expressly set forth in this agreement." Doc. 76-1 at 9. As described in detail below, the relocation services provided by SIRVA include assistance to relocating Office Depot employees in selling their homes. This case concerns whether Carpenter was entitled to benefit from the Home Sale Buyout Program, under which the employee's home would be purchased if it failed to sell after ninety days on the market.

On May 10, 2006, about two weeks before Carpenter accepted the Portland position, Office Depot Senior Manager of Global Mobility Lisa Eckelkamp sent an email to SIRVA Vice President Chris Cicen under the heading "Co Op buildings." Doc. 84-2 at 15. Eckelkamp's email asked: "Chris, how does Sirva handle condo's that are in a Co Op building? We have a

person [Carpenter] debating whether to move and asking whether we provide assistance on that?" *Ibid.* Cicen responded to Eckelkamp as follows:

> It used to be that they were just flat out not eligible for the homesale program, however, it is now a case by case. If the ownership board allows "us" (third party relocation company) to participate in buying and selling a property, we can bring through the program. Historically, there have been few governing boards that allow 3rd parties to be involved—but more and more are open to it today. The best thing to do is have the employee check w/ the Board to see if in fact a 3rd party company can be involved in the sale (or we can make the calls once authorized) and then we go from there.

*Ibid.* Cicen sent his email only to Eckelkamp. *Ibid.*; Doc. 84 at p. 3, ¶ 14. But Eckelkamp forwarded Cicen's email to Carpenter on May 10 with this message: "Carol, please see the response from our Relocation company. The only way we can let the condo come through the program is if your Board allows third party relocation companies to be involved." Doc. 84-2 at 15. About a week later, on May 16, Carpenter obtained her condo board's approval to use a third-party relocation company to assist her in the sale of the co-op. Doc. 84 at p. 7, ¶ 2.

In the meantime, on May 11, Carpenter emailed Eckelkamp to say that she "tried to find the Relo. info on the intranet but couldn't locate it" and to request that Eckelkamp send her the pertinent relocation information. Doc. 84-1 at 17. Eckelkamp responded by email that day, informing Carpenter that she qualified for Office Depot's "Tier 2 program" and stating that "[t]his program consists of 3 components." Doc. 84-1 at 19. Eckelkamp described the three components as follows:

> **1. Home Sale:** OD [Office Depot] pays for home sale program—up to 7% Real Estate commission in addition to home sale closing costs. This expense is direct billed to Office Depot with zero tax liability to associate. (Qualifications for entry into program).

> **2. Household Goods Program:** Pack, load, and delivery of all house items in addition to move of up to two vehicles. This is direct billed to OD with zero tax impact to associate. Tier 2 also has 90 days of storage available.

**3. Lump Sum Program:** Cash payment of all other benefits. This cash payment is less income taxes. (See excel Lump sum Breakdown Sheet) This Lump Sum is typically paid within the first two weeks of an approved Relocation.

*Ibid*. Eckelkamp's email then states: "I have attached the official policy and the Lump Sum excel sheet." *Ibid*.

The attached document, titled "Tier 2 Relocation Program," states: "Office Depot provides an extensive relocation benefits program to provide you and your family with a network of support and services throughout your relocation process." *Id*. at 20. The document also states: "Each phase of your move will be assigned to one of our relocation service providers, who will assist you throughout every step of your move." *Ibid*. Under the heading "Home Sale Program Details," the document states: "Office Depot partners with <u>Sirva Relocation</u> to provide a unique Home sale Program to our eligible relocating employees …. No Employee or new Hire should list their property without contacting the Relocation Department." *Id*. at 21. Then, under the heading "Home Sale Buyout Program (Safety Net)," the document states:

**Home Sale Buyout Program (Safety Net)**

Sirva Relocation offer our Tier 2 relocating homeowners a 'Buyout' option on their home. On day 75 of marketing time two **Relocation Appraisals** are ordered. (The Appraisers are local independent Appraisers.) **Relocation appraisals** are very different than a bank or mortgage appraisal. Please see the article attached which explains the difference between appraisals. **The buyout should be considered a last option to sell your home.** Once the two appraisals are completed, at Day 90 you will be offered a purchase price for your home valued at 95% of the average of the two Appraisals. You would have 60 days after this day to accept the offer.

*Id*. at 22.

Carpenter accepted the Portland position in reliance upon the May 10 Cicen email (which, as noted above, Eckelkamp had forwarded to her) and the email and "Tier 2 Relocation

-4-

Program" document sent by Eckelkamp on May 11. Doc. 83 at pp. 12-13, ¶ 3; Doc. 84 at p. 7, ¶ 3. The facts in the previous sentence are set forth in Carpenter's Local Rule 56.1(b)(3)(C) statements of additional facts. Because neither Office Depot nor SIRVA responded to Carpenter's Local Rule 56.1(b)(3)(C) statements, the facts in those statements are deemed true for purposes of summary judgment. *See* N.D. Ill. L.R. 56.1(a)(3) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

After Eckelkamp's May 11 email exchange with Carpenter, and before Carpenter contacted SIRVA or accepted the Portland position, Eckelkamp sent Carpenter an overnight FedEx package with an information relocation guide titled "Tier 2 Relocation Program/Manager and Senior Manager Program." Doc. 71 at ¶ 21; Doc. 83 at p. 8, ¶ 21. On its first page, the guide states:

> The Company [Office Depot] reserves the right to end, suspend or amend the relocation policy. Further, the Company retains ultimate discretionary authority to interpret the provisions of this policy and to determine eligibility and benefits. This policy shall not be considered or construed as an employment contract and does not constitute a guarantee of employment for any minimum or specified period of time.

Doc. 71 at ¶ 22; Doc. 74-9 at 2. In a section titled "Property Eligibility," the guide states that "[i]neligible homes may include … Co Op Properties." Doc. 71 at ¶ 23; Doc. 74-9 at 10.

However, neither Carpenter nor her husband received a copy of the "Tier 2 Relocation Program/Manager and Senior Manager Program" guide before Carpenter accepted the Portland position. Doc. 83 at p. 8-10, ¶¶ 21-24, 27-28; *id.* at p. 13, ¶ 4; Doc 84 at p. 7, ¶ 4. Although

Office Depot's Local Rule 56.1(a)(3) statement asserts that Carpenter received a copy of the guide from Eckelkamp in 2004 (in connection with her move to Chicago) and from SIRVA in May 2006, and also that Carpenter saw the guide on the Office Depot intranet, the portion of the record cited by Office Depot—Eckelkamp's averment that "[i]t was the custom and practice of the mobility services department to Fed-Ex mobility services documents, including [the guide], to all prospective transferees, so that our employees' relocation decisions would be informed"—does not support those assertions. Doc. 71 at ¶ 24 (citing Doc. 74-8 at ¶ 18). Those assertions accordingly are disregarded. *See* N.D. Ill. L.R. 56.1(a)(3) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). In any event, Carpenter denies having seen the "Tier 2 Relocation Program/Manager and Senior Manager Program" guide on the Office Depot intranet. Doc. 83 at pp. 8-9, ¶ 24.

Carpenter's May 11 email exchange with Eckelkamp was the last time Carpenter communicated with, requested information from, or had any discussions with Eckelkamp before relocating to Portland in June 2006. *Id*. at p. 9, ¶ 25. Carpenter does not dispute that she had no discussions with an Office Depot employee between May 11 and May 26 regarding her relocation benefits. *Id*. at p. 9, ¶ 26. Nor does Carpenter dispute that SIRVA's internal client management system, Wintrac, shows that Kirk Carpenter contacted SIRVA on May 18, and that SIRVA "Fed-Ex'ed initial packet and additional Office Depot info out" on May 19. *Id*. at p. 9, ¶ 27. After May 11, 2006, nobody at SIRVA directly told Carpenter that the co-op was eligible for a buyout. Doc. 84 at p. 6, ¶ 21.

On or about May 18, Office Depot asked SIRVA to place Carpenter and the co-op in the relocation program. *Id*. at p. 2, ¶ 9. SIRVA acknowledged Office Depot's request and initiated Carpenter's relocation. Doc. 76 at ¶ 10; Doc. 84 at p. 2, ¶ 10. SIRVA arranged to move the Carpenters' belongings from Chicago to Portland and arranged for third-party assistance in marketing the co-op. Doc. 76 at ¶ 11; Doc. 84 at p. 2, ¶ 11. Heather Bise was the SIRVA relocation counselor initially assigned to handle Carpenter's relocation. Doc. 71 at ¶ 29; Doc. 83 at p. 10, ¶ 29. On July 26, Kiezieh McCullough replaced Bise as Carpenter's relocation counselor. Doc. 71 at p. 10, ¶ 31; Doc. 83 at ¶ 31.

Starting on August 7, Carpenter exchanged a series of emails with McCullough in which she complained that her co-op was not being bought out. Doc. 76 at ¶ 17; Doc. 84 at p. 4, ¶ 17. McCullough stated that the co-op, because it was a co-op, was not eligible for the Home Buyout Program under the Tier 2 Relocation Program. Doc. 76 at ¶ 18; Doc. 84 at pp. 6-7, ¶ 18. This was the first time that Carpenter was told that the co-op was ineligible for the Home Sale Buyout Program. Doc. 84 at p. 7, ¶ 3.

On August 9, Carpenter sent Eckelkamp an email to ask why she was not being allowed to participate in the Home Sale Buyout Program. Doc. 76 at ¶ 19; Doc. 84 at p. 5, ¶ 19; Doc. 76-5 at 2-3. On September 15, Carpenter sent another email to Eckelkamp asking "if the contract that Office Depot signed with Sirva excludes certain properties, i.e. Co-ops." Doc. 76-5 at 7. That day, Eckelkamp responded that "our contract does exclude co ops," that Office Depot "had two people this year who could not enter into the buyout program," and that "[t]his is not a SIRVA issue, [as] most relocation companies have exactly the same rules regarding co op properties." *Id*. at 6.

**Discussion**

**I.      Breach of Contract (Count I)**

Count I alleges that Defendants breached their contact with Carpenter by refusing to purchase the co-op under the Home Sale Buyout Program.  Under Illinois law, a plaintiff alleging breach of contract must show: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages."  *Reger Dev., LLC, v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012); *Roberts v. Adkins*, 921 N.E.2d 802, 810 (Ill. App. 2010); *Kopley Grp. V., L.P. v. Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 226 (Ill. App. 2007).

**A.      Office Depot**

Carpenter argues that Office Depot's contractual obligation to provide her a home buyout benefit upon her acceptance of the Portland position arises from Eckelkamp's May 11 email and the attached "Tier 2 Relocation Program" document, which Eckelkamp called Office Depot's "official policy" for relocation benefits.  Doc. 85 at 4.  As noted above, in a section titled "Home Sale Buyout Program (Safety Net)," the "Tier 2 Relocation Program" document states that an employee's home will be purchased at 95% of its appraised value if it does not sell within ninety days of being placed on the market.  In response to Carpenter's submission, Office Depot maintains that the "Tier 2 Relocation Program" document was "purely informational" and "bereft of any of the elements required to establish a legal contract."  Doc. 70 at 3.  Viewing the record in the light most favorable to Carpenter, the document contractually entitled Carpenter to the benefits of the Home Sale Buyout Program.

-8-

Under Illinois law, "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987); *see also Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) ("Illinois law … recognizes that employee handbooks have the potential to form contracts between employers and workers"); *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002) (same); *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996) (same); *Robinson v. Ada S. McKinley Cmty. Servs., Inc.*, 19 F.3d 359, 360-61 (7th Cir. 1994) (holding that contractual obligations arose from an employment offer letter and an employee handbook); *Mitchell v. Jewel Food Stores*, 568 N.E.2d 827, 830-31 (Ill. 1990) (holding that a manual describing employee benefits and policies "was sufficient to create a binding contract between defendant and plaintiff"). The circumstances under which an employee handbook or policy statement creates enforceable contractual rights are as follows:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Border*, 75 F.3d at 273 (citing *Duldulao*, 505 N.E.2d at 318); *see also Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013) (same).

The summary judgment record shows that Office Depot sent the "Tier 2 Relocation Program" document to Carpenter while she considered relocating, that she was aware of its contents, and that she accepted the Portland position in reliance upon its contents. Doc. 83 at pp. 12-13, ¶¶ 1-3; Doc. 84 at pp. 6-7, ¶¶ 1-3. And a reasonable factfinder could conclude that the "Tier 2 Relocation Program" document and Eckelkamp's May 11 email conveyed a promise

clear enough that a reasonable employee would believe that she was entitled to benefit from the Home Sale Buyout Program. Eckelkamp's email begins by stating that Carpenter "would qualify for [Office Depot's] Tier 2 Program," and concludes by informing Carpenter that Eckelkamp "ha[s] attached the official policy." Doc. 76-2 at 1. The attached "Tier 2 Relocation Program" document states that as part of the relocation program, Office Depot, acting through SIRVA, "offer[s] our … relocating homeowners a 'Buyout' option on their home." *Id*. at 4. After describing how the buyout option operates, the document states that "you will be offered a purchase price for your home valued at 95% of the average of the two Appraisals." *Ibid*. The language describing the buyout program is not vague or equivocal, and nothing in the attachment indicates that co-op properties may be ineligible for a buyout. This is sufficient at the summary judgment stage to find that Office Depot contractually obligated itself to provide Carpenter with a home buyout benefit following her relocation.

Office Depot next argues that even if the "Tier 2 Relocation Program" document contains language sufficient to create a contract, the "Tier 2 Relocation Program/Manager and Senior Manager Program" guide contained an express disclaimer stating "that its terms *did not constitute a contract* between Office Depot and its employees." Doc. 70 at 5. It is true that the guide contains that disclaimer and also that it cautioned that co-ops are ineligible for certain benefits. Doc. 74-9 at 2, 10. It is likewise true that "a disclaimer, if clear and forthright, … is a complete defense to a suit for breach of contract based on an employee handbook." *Workman v. UPS, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000); *see also Moss*, 473 F.3d at 700 ("disclaiming language in a handbook may preclude the formation of an employment contract"); *Garcia*, 279 F.3d at 532 ("Disclaimers … are enough in Illinois to show that the handbook does not create legal rights."); *Border*, 75 F.3d at 273 (same); *Moore v. Ill. Bell Tel. Co.*, 508 N.E.2d 519, 521

(Ill. App. 1987) (holding that the presence of a disclaimer in an employment document meant "it would not be reasonable for an employee to believe that defendant had made an offer").

The trouble with Office Depot's argument is that the record, viewed with all genuine disputes resolved in Carpenter's favor, shows that Carpenter did not receive or see the "Tier 2 Relocation Program/Manager and Senior Manager Program" guide before accepting the Portland position. And if Carpenter did not receive or see the guide, its provisions are not part of her contract with Office Depot. *See Montgomery v. Ass'n of Am. R.Rs.*, 741 F. Supp. 1313, 1316 (N.D. Ill. 1990) (Illinois law) (holding that where the plaintiff never received a copy of a policy manual preface containing a disclaimer, the plaintiff could reasonably have believed that the other portions of the policy manual constituted an offer); *cf. Hanna v. Marshall Field & Co.*, 665 N.E.2d 343, 790-91 (Ill. App. 1996) ("A personnel manual which is never disseminated to the employee cannot form the basis for a contract."). The factual dispute over whether Carpenter received or saw the guide before accepting the Portland position precludes summary judgment for Office Depot based on the disclaimer. *See Lawson v. Veruchi*, 637 F.2d 699, 705 (7th Cir. 2011) ("It is not for [the court] … to judge the credibility of … competing versions [of fact]—that is a question for the jury."); *Constr. Aggregates Corp. v. Hewitt-Robins, Inc.*, 404 F.2d 505, 509 (7th Cir. 1968) ("the question of the existence of the terms of a contract should be submitted to a jury unless a reasonable man can determine the issue in only one way"); *Mulliken v. Lewis*, 615 N.E.2d 25, 28 (Ill. App. 1993) ("what constituted the terms of the contract would be a question of fact for the jury").

## B.    SIRVA

SIRVA argues that it is entitled to summary judgment on the contract claim because the undisputed facts establish that it had no contract with Carpenter.  To show that she had a contract with SIRVA, Carpenter must show "offer, acceptance, and consideration." *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996); *see also Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006).

The *only* communication that the contract section of Carpenter's brief identifies to support her position that she had a contract with SIRVA is Eckelkamp's May 11 email and the attached "Tier 2 Relocation Program" document.  Doc. 85 at 3-6.  As discussed in Part I.A, *supra*, the email and document are sufficient at the summary judgment stage to establish a contractual obligation on Office Depot's part to allow Carpenter to participate in the Home Sale Buyout Program.  To determine whether a comparable contractual obligation was imposed on SIRVA, the court must take account of the fact that the email and document were sent to Carpenter by Office Depot (through its employee Eckelkamp), not by SIRVA.  Indeed, there is no record evidence suggesting that SIRVA was even aware that Eckelkamp sent the May 11 email and "Tier 2 Relocation Program" document to Carpenter, and SIRVA's first contact with Carpenter did not occur until a week later, on May 18, 2006.  Doc. 84 at p. 2, ¶ 9.  And the contract between SIRVA and Office Depot states that they are "[not] joint venturers, partners, or affiliates of each other and *shall not be held responsible for each other's actions or omissions* except as expressly set forth in this agreement."  Doc. 76-1 at 9 (emphasis added).  Given all this, Eckelkamp's act of sending her May 11 email and the "Tier 2 Relocation Program" document to Carpenter did not contractually obligate SIRVA to buy out the co-op.  *See Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 656 (7th Cir. 2003) (affirming

summary judgment for the insurer and finding that no contract with higher liability limits was formed where the insurer had "never communicated directly" on that subject with either the retail insurance broker or the bankrupt entity on whose behalf the broker had procured the policy); *Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 427 (Ill. App. 2004) (holding that defendant property owner was not liable for the costs of renovation work arising from a contract between the plaintiff construction contractor and a tenant of the property where the property owner had "no contact with [the contractor] before or during the renovation project" regarding payment).

Carpenter argues in the alternative that even if she and SIRVA had no direct contractual relationship, "SIRVA had a contractual relationship with Office Depot to provide Office Depot's employees with relocation services," Carpenter "was clearly an employee of Office Depot at the time of the incident in question," and "SIRVA failed to provide Office Depot and the plaintiff with the relocation services it was contractually liable to perform." Doc. 85 at 6. Put another way, and without referencing the doctrine, Carpenter argues that she was a third-party beneficiary of the Office Depot-SIRVA contract.

The argument fails on forfeiture grounds because Carpenter presents a skeletal argument and offers no supporting authority. The Illinois third-party beneficiary doctrine is subject to a strict "intent to benefit" test. *See XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995). "Under that test, it is not enough that a party receive merely an incidental benefit" from a contract between two other parties. *Ahern v. Bd. of Educ. of City of Chicago*, 133 F.3d 975, 983 (7th Cir. 1998); *see also People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 400 N.E.2d 918, 920 (Ill. 1980). In fact, "[t]here is a strong presumption that parties intend contract provisions to apply only to themselves." *Ahern*, 133 F.3d at 983; *see also*

-13-

*155 Harbor Drive Condo. Assoc. v. Harbor Point Inc.*, 568 N.E.2d 365, 375 (Ill. App. 1991). To overcome the presumption, there must "be practically an express declaration" that a third party is an intended beneficiary of the contract. *155 Harbor Drive*, 568 N.E.2d at 375; *see also Johnson Bank v. George Korbakes & Co., LLP*, 472 F. 3d 439, 441 (7th Cir. 2006) ("Parties to contracts are naturally reluctant to empower a third party to enforce their contract, so third-party beneficiary status ordinarily is not inferred from the circumstances but must be express."); *A.E.I. Music Network, Inc. v. Bus. Computers, Inc.*, 290 F.3d 952, 955 (7th Cir. 2002) ("Third parties, that is, persons who are not parties to a contract, are permitted to enforce the contract if and only if the parties made clear in the contract an intention that they be permitted to do so."). Carpenter's brief does not even try to overcome this presumption, thus forfeiting the point. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407-08 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to [the defendant's] motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386-87 (7th Cir. 2012); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1336 (7th Cir. 1995).

## II.     Fraudulent Misrepresentation (Count II)

As noted above, the court granted Office Depot's motion to dismiss to dismiss the fraudulent misrepresentation claim against it. Doc. 36. SIRVA now seeks summary judgment on that claim. Doc. 73 at 7-10. Carpenter's response brief does not defend her fraud claim

against SIRVA, resulting in a forfeiture. *See Milligan*, 686 F.3d at 386-87; *Alioto*, 651 F.3d at 721; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."); *Humphries*, 474 F.3d at 407-08.

## III.    Negligent Misrepresentation (Count III)

SIRVA argues that the economic loss doctrine—which "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations," *Wigod*, 673 F.3d at 567; *see Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-52 (Ill. 1982)—defeats Carpenter's negligent misrepresentation claim. Doc. 73 at 10-12. Although Carpenter's brief defends the negligent misrepresentation claim against other arguments advanced by Defendants, it does not mention the economic loss doctrine, let alone explain why the doctrine does not apply to that claim. Doc. 85 at 6-7. Carpenter has thereby forfeited that claim. *See Milligan*, 686 F.3d at 386-87; *Alioto*, 651 F.3d at 721; *Bonte*, 624 F.3d at 466; *Humphries*, 474 F.3d at 407-08.

## IV.    Quasi-Contract/Unjust Enrichment (Count IV)

"In an action for 'quasi-contract' (or, contract implied in law), a plaintiff asks the court to remedy the fact that the defendant was 'unjustly enriched' by imposing a contract." *Vill. of Bloomingdale v. CDG Enters., Inc.*, 752 N.E.2d 1090, 1101 (Ill. 2001); *see also Fleissner v. Fitzgerald*, 937 N.E.2d 1152, 1159 (Ill. App. 2010) (same). "A contract implied in law does not depend on the intention of the parties, but exists where there is a plain duty and a consideration. The essential element is the receipt of a benefit by one party under circumstances where it would be inequitable to retain that benefit without compensation." *Champaign Cnty. v. Hanks*, 353 N.E.2d 405, 408 (Ill. App. 1976). "In Illinois, to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental

principles of justice, equity, and good conscience." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (internal quotation marks omitted). "Such an action is based on the principle that no one ought to enrich himself unjustly at the expense of another. Liability is based on the principle of unjust enrichment and the contract is the *remedy*." *Vill. of Bloomingdale*, 752 N.E.2d at 1102; *see also Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990) ("[q]uasi-contractual duties arise only in situations of unjust enrichment, situations where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it") (internal quotation marks omitted).

### A. Office Depot

Carpenter cannot recover from Office Depot for the same injury under both contract and quasi-contract theories. "Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *Borowski v. DePuy, Inc.*, 850 F.2d 297, 301 (7th Cir. 1988) (internal quotation marks omitted); *see also Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (same); *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.") (internal quotation marks omitted). However, a quasi-contract claim can proceed when there is a question of fact as to whether a contract governs the parties' relationship. *See Weyent v. Vertical Networks, Inc.*, 2004 WL 407017, at *2 (N.D. Ill. Feb. 4, 2004) (allowing a breach of contract claim and a quasi-contract claim to proceed when "it is a question of fact as to whether the contract governs the relationship between [plaintiff] and [defendant]"); *Lilly v. Ford Motor Co.*, 2002 WL 84603, at *6 (N.D. Ill. Jan. 22, 2002) (allowing a breach of contract claim and a quasi-contract claim because "there is a

good faith dispute as to whether an express warranty exists").  Because the existence of a home buyout contract between Office Depot and Carpenter turns on disputed factual questions that must be resolved at trial, Carpenter's quasi-contract claim cannot be dismissed at this stage of the case on the ground that it is incompatible with her contract claim.

Office Depot argues that Carpenter "relocated [to Portland] for her own personal reasons" and that "Office Depot did not benefit from this relocation because it was a lateral transfer of a district sales manager within the company."  Doc. 70 at 12.  Although this submission might win the day at trial, the court cannot conclude on summary judgment that Office Depot indisputably obtained no benefit from Carpenter's transfer.  Because the trier of fact could conclude that Office Depot "has unjustly retained a benefit [obtaining Carpenter's agreement to transfer to Portland without allowing her to benefit from the Home Sale Buyout Program] to [Carpenter's] detriment, and that [Office Depot's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience," *Cleary*, 656 F.3d at 516, Carpenter's quasi-contract claim against Office Depot survives summary judgment.

### B.     SIRVA

SIRVA is entitled to summary judgment on Carpenter's quasi-contract claim.  "To recover under [a quasi-contract] theory, plaintiffs must show that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment."  *People ex rel. Hartigan*, 607 N.E.2d at 177.  By contrast to Office Depot, which accepted from Carpenter the benefit of her transfer to Portland, there is no evidence that SIRVA accepted anything from Carpenter.  As Carpenter argues, an element of her quasi-contract claim is "the receipt by the defendant from the plaintiff of a benefit which it would be unjust to retain without paying compensation."  Doc. 85 at 7-8.  It follows that SIRVA's failure to purchase the co-op cannot

amount to unjust enrichment. *See Nat'l Casualty Co. v. White Mountains Reinsurance Co. of Am.*, 735 F.3d 549, 550 (7th Cir. 2013) ("[t]o recover under a theory of unjust enrichment, [the plaintiff] must show that defendant … voluntarily accepted a benefit") (internal quotation marks omitted).

For the sake of completeness, the court notes that Illinois law recognizes that a quasi-contract claim may proceed under certain limited circumstances where the defendant received a benefit from a third party rather than directly from the plaintiff. In *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989), the court held that although "[m]any unjust-enrichment cases involve situations in which the benefit the plaintiff is seeking to recover proceeded directly from him to the defendant," a plaintiff may pursue an unjust enrichment claim where the benefit was transferred to the defendant by a third party if "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *Id.* at 679 (internal quotation marks and citations omitted); *see also Associated Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 854 (7th Cir. 2007) (same). Carpenter does not argue that any of these three circumstances are present here—indeed, as noted above, she argues that "the receipt *by the defendant from the plaintiff* of a benefit which it would be unjust to retain without paying compensation" is an element of her claim, Doc. 85 at 7-8 (emphasis added), without recognizing the exceptions carved by *HPI Health Care Services*—thereby forfeiting the point. *See Milligan*, 686 F.3d at 386-87; *Alioto*, 651 F.3d at 721; *Bonte*, 624 F.3d at 466; *Humphries*, 474 F.3d at 407-08. In any event, it does not appear from the record that Carpenter could benefit from any of those three exceptions. *See Cole v.*

-18-

*Cole*, 2012 IL App (4th) 110842-U, 2012 WL 7018364, at *4 (Ill. App. Mar. 27, 2012) (holding on summary judgment that where none of the three exceptions applied, the plaintiff could not sustain his unjust enrichment claim based on a benefit bestowed by a third party on the defendant).

## V. Promissory Estoppel (Count V)

Under Illinois law, a promissory estoppel plaintiff must show that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009); *see also Quake Constr., Inc. v. Am. Airlines, Inc.,* 565 N.E.2d 990, 1004 (Ill. 1990) (same). "Promissory estoppel is not a doctrine designed to give a party … a second bite at the apple in the event that it fails to prove a breach of contract." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869-70 (7th Cir. 1999) (internal quotation marks omitted). "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking …. [T]o allow the doctrine of promissory estoppel to be invoked where consideration exists, becomes a gratuitous duplication or, worse, circumvention of carefully designed rules of contract law." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677, 678 n.9 (7th Cir. 2005) (internal quotation marks omitted); *see also Wigod*, 673 F.3d at 566 ("Promissory estoppel makes a promise binding where all the other elements of a contract exist, but consideration is lacking.") (internal quotation marks omitted); *Bank of Marion v. Robert "Chick" Fritz, Inc.,* 311 N.E.2d 138, 140 (Ill. 1974) (holding that promissory estoppel applies only to serve "as a substitute for consideration or an exception to its ordinary requirements"). "It necessarily follows that where there is no issue of consideration, there is no gap in the remedial

-19-

system for promissory estoppel to fill." *Dumas*, 416 F.3d at 677 (internal quotation marks omitted); *see also All-Tech Telecom, Inc.,* 174 F.3d at 869 (same).

### A.    Office Depot

Carpenter's promissory estoppel claim against Office Depot fails because consideration indisputably is not lacking.  Carpenter's acceptance of Office Depot's offer of the Portland position imposed identifiable obligations on both parties: Carpenter agreed to relocate to Portland and work for Office Depot, and Office Depot agreed to provide her with certain relocation benefits.  (Although the nature of those benefits is disputed, it is undisputed that Office Depot promised to provide Carpenter with *some* benefits.)  Given these mutual obligations, there was adequate consideration for the contract.  *See Wigod*, 673 F.3d at 563-64; *Dumas*, 416 F.3d at n.9; *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1145 (Ill. 1999).  Illinois law therefore forecloses Carpenter's promissory estoppel claim against Office Depot.  *See Dumas*, 416 F.3d at 678 n.9 ("The fact that consideration likely existed effectively extinguished any promissory estoppel claim that Dumas may have had."); *All-Tech Telecom, Inc.,* 174 F.3d at 869; *Wagner Excello Foods, Inc. v. Fearn Intern, Inc.*, 601 N.E.2d 956, 965 (Ill. App. 1992) ("[T]he plaintiff performed its part of the bargain and thereby rendered its consideration.  There is no reason, therefore, to rely on promissory estoppel.").

### B.    SIRVA

To prevail on her promissory estoppel claim against SIRVA, Carpenter must show that SIRVA "made an unambiguous promise to [her]" and that "[her] reliance was expected and foreseeable by [SIRVA]." *Newton Tractor Sales*, 906 N.E.2d at 523-24.  The promissory estoppel section of Carpenter's brief identifies only one communication that, according to Carpenter, constitutes an unambiguous promise by SIRVA to purchase the co-op: the May 10

email from Cicen to Eckelkamp, which Eckelkamp forwarded to Carpenter. Doc. 85 at 10-11. (Carpenter argues that the "Tier 2 Relocation Program" document attached to Eckelkamp's May 11 email was an unambiguous promise by *Office Depot*; she does not contend that the document reflected a promise by *SIRVA*. *Id*. at 10 ("The defendant Office Depot, made an unambiguous promise to the plaintiff, in a written document entitled 'Tier 2 Relocation Program,' on May 11, 2006.").)

Cicen's May 10 email cannot bear the weight that Carpenter places on it. Although Eckelkamp (of Office Depot) forwarded that email to Carpenter, Cicen (of SIRVA) had sent it only to Eckelkamp. Because Cicen did not send the email to Carpenter, and because there is no record evidence suggesting that Cicen intended that the email be forwarded to Carpenter, it cannot reasonably be said that the email contains an unambiguous promise *from* SIRVA *to* Carpenter. *See Matter of Morris Paint & Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985) ("The doctrine of promissory estoppel may be invoked where … there is reliance by *the party to whom the promise is made* … and … *the party to whom the promise is made* relies upon the promise to his detriment") (emphasis added); *Bolden v. Gen. Accident, Fire & Life Assurance Corp.*, 456 N.E.2d 306, 309 (Ill. App. 1983) (holding that where the plaintiffs never had "any promise [made] to them," they were "not promisees and therefore … not authorized to bring an action in promissory estoppel"); *Brook v. Oberlander*, 199 N.E.2d 613, 617 (Ill. App. 1964) ("the plaintiff corporation, not being the offeree, had no right to rely on defendant's proposal"). For the same reason, nor can it reasonably be said that Carpenter's reliance on the Cicen email was expected and foreseeable by SIRVA. *See Levitt Homes Inc. v. Old Farm Homeowner's Ass'n*, 444 N.E.2d 194, 204 (Ill. App. 1982) (holding that in an action for promissory estoppel, "[t]he reliance must be expected and foreseeable *by the party making the promise*") (emphasis added); *Dale v.*

*Groebe & Co.*, 431 N.E.2d 1107, 1111 (Ill. App. 1981) (same).  Accordingly, SIRVA is entitled to summary judgment on the promissory estoppel claim.

## VI.     Specific Performance (Count VI)

Count VI, which is titled "Specific Performance," is redundant of Carpenter's other claims, as "specific performance is a remedy, not a cause of action."  *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994); *see also Chi. Police Sergeants Ass'n v. City of Chicago*, 2011 WL 2637203, at *9 (N.D. Ill. July 6, 2011) ("injunctive relief and specific performance are remedies, not independent causes of action") (internal quotation marks omitted); *AT&T Capital Servs., Inc. v. Shore Fin. Servs., Inc.*, 2010 WL 2649874, at *17 (N.D. Ill. June 30, 2010) (same); *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1040 n.11 (N.D. Ill. 2009) (same); *Am. Nat'l Bank & Trust Co. of Chi. v. Allmerica Fin. Life Ins. & Annuity Co.*, 2003 WL 1921815, at *4 (N.D. Ill. Apr. 21, 2003) (same).  Accordingly, Carpenter cannot proceed at trial with a specific performance "claim."  That said, should Carpenter prevail at trial on either of her claims against Office Depot, she will be permitted to argue that specific performance is an appropriate remedy.

### Conclusion

For the foregoing reasons, SIRVA's summary judgment motion is granted, while Office Depot's summary judgment motion is granted with respect to Counts III, V, and VI, and is denied with respect to Counts I and IV.  The case will proceed to trial on Counts I and IV (contract and quasi-contract) against Office Depot.

December 9, 2013                                   _____
                                                                United States District Judge